UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60980-CIV-MARRA/JOHNSON

BARBARA WISH,

Plaintiff,

vs.

MSC CROCIERE S.A., and
MSC CRUISES (USA) INC.,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants MSC Crociere S.A. and MSC Cruises (USA) Inc.'s Amended[1] Motion for Summary Judgment [DE 25], filed June 24, 2008. The motion is fully briefed and ripe for review. The Court has carefully considered the motion and is otherwise fully advised in the premises.

I.  Background

The facts, as culled from exhibits, depositions, answers to interrogatories and reasonably inferred therefrom in a light most favorable to Plaintiff, for the purpose of this motion, are as follows:

On or about April 2, 2007, Plaintiff Barbara Wish ("Wish" "Plaintiff"), a 68 year old woman, was a passenger aboard the MSC Lirica, Defendant's cruise ship. (Compl. ¶ 9;Wish Dep. 5.)  After eating lunch and proceeding back to her room, Plaintiff slipped and fell on a three to

---

[1] Defendant filed an amended motion in order to include citations to a deposition transcript that was completed after the filing of the original motion for summary judgment [DE 21].

four foot area of water while walking across the ship's pool deck. (Wish Dep. 65-68.) When Plaintiff fell, she was looking in front of her and did not see the puddle of water. (Wish Dep.72, 75.) Plaintiff was wearing shoes with rubber soles when she fell. (Wish Dep. 69.)

The surface of the pool deck is a plastic/wood composite known as Balidot.[2] (Guiseppe Castellano Dep. 13.) Balidot is a material that does well when exposed to the elements, such as salt and rain. (Castellano Dep. 13.) Six pool boys are responsible to keep the pool deck dry, by drying it with mops and squeegees. (Castellano Dep. 7-8.) The pool boys do not attempt to keep the deck dry while it is raining. (Castellano Dep. 8-9.) The pool deck is an open deck, meaning it is exposed to the elements and not within the confines of the interior of the ship. (Castellano Dep. 7.)

Passengers are warned of the potential of slippery decks by a Welcome Aboard pamphlet and a safety video shown 24 hours a day on one of the internal television channels on the ship.[3] (Castellano Dep. 11-12.) There are normally four to six safety signs present on the pool deck and more are posted when it rains. (Castellano Dep. 10-11, 17-18, 28, 40) On the day of the incident, neither Plaintiff nor her travel companion, Antonio Carilli, saw any warning sings posted. (Wish Dep. 75; Carilli Dep. 19.) However, Mr. Castellano, the cruise's safety officer, testified that the safety signs were posted. (Castellano Dep. 4, 10-11.)

---

[2] Plaintiff objects to this evidence and argues that Mr. Castellano did not indicate any expertise in such materials. (Resp. at 5.) Given that the Court is denying summary judgment, it is unnecessary to address this argument.

[3] Plaintiff states that because Defendants failed to list these items in their privilege log or in response to her request for production, they cannot be considered on a motion for summary judgment or at trial. (Resp. at 3.) Plaintiff also argues that there is no evidence in the record that she received this pamphlet or was aware of this video. (Resp. at 4.) Given that the Court is denying summary judgment, it is unnecessary to address this argument.

In her deposition, Plaintiff stated that it was raining earlier in the day, while she was shopping at a port in Barbados, but that the rain stopped by the time she returned to the ship and went to lunch. (Wish Dep. 63.)  Plaintiff told her friend, Lucy Ridgeway, that the deck was wet because of the rain. (Lucy Ridgeway Dep. 24.)   When asked why Plaintiff fell, Mr. Carillo testified, "[b]ecause it was wet. . . 'cause it was still rain. It was all wet.  It was water." (Carillo Dep. 22.)  Mr. Carillo also testified that it was drizzling when Plaintiff and he left the lunch buffet.  (Carillo Dep. 19.)

Mr. Castellano's testimony regarding the rain that day is as follows:

Q: Do you know why there was water on that open deck that day?

A: Yes, I know because we have a deck logbook on the ship. So I check why there was water. In that moment on that date there was rain.  For this reason there was water on deck. It was bad weather and was raining.

(Castellano Dep. 6.)

Q: As you were reviewing the deck log, do you recall that it was raining?

A: Yes.

(Castellano Dep. 17.)

Q: . . . And you believe that the reason she fell was because of the rain?
. . .

A.  How I can read from that logbook was raining at that moment.  And even if she declares on her statement that there was water on the deck and from deck logbook you can see that it was raining more or less around six hours it was raining a full day bad weather and for sure that moment was raining.  This is what I can see and read from the statement because I don't remember exactly one year ago if it was raining.

(Castellano Dep. 18.)

Q: When you went up [to the deck], was it raining?

3

>   A: Yeah. When I went up, it was raining.
>   . . .
>   Q: Wasn't this at least one or two hours after the accident?
>
>   A: No. I - I don't remember exactly. . . .

(Castellano Dep. 29-30.)

>   A: [referring to the logbook] . . . it's clear written that it was raining from 12 pm to [ ] 6 pm in the evening.  And all day is cloudy, cloudy, cloudy, raining, cloudy, raining.  So it was really bad weather in that day.  For sure it was wet on the swimming pool. . . But I cannot remember last year if it was raining.  And just suppose I'm sure because I read officer document and the passenger declared that there was water on deck.  So I am sure that it was raining.  Because an officer book was written cloudy, raining, cloudy, raining from midday until 6 o'clock pm. So it's not five minutes.  It's six hours. It was bad weather. But if you ask me to remember.

(Castellano Dep. 43-44.)

According to Plaintiff, a member of the ship's crew was pushing a very large puddle of water and she believes that his action created the puddle that caused her to slip. (Pl. Answer to Def. Interrogs. 21.)   However, Plaintiff testified at her deposition that she did not see anyone pushing water when she fell, although she had seen someone pushing water on a previous day. (Wish Dep. 72.)   After Plaintiff had fallen, Mr. Carilli testified that he noticed a crew member using a squeegee and pushing water in the area where Plaintiff fell. (Carilli Dep. 27, 34.)

Defendants argue that they fulfilled their duty of care to Plaintiff by adequately warning Plaintiff that the pool deck could be slippery when wet and by taking extreme measures to keep the deck area dry. (Mot. at 7.)  Furthermore, Defendants assert that they had no duty to warn Plaintiff of the open and obvious condition of rainwater. (Mot. at 10.)  In response, Plaintiff contends that there is a dispute as to whether there were adequate warning signs advising that the deck was slippery. (Resp. at 2.)  Furthermore, Plaintiff states that the puddle of water that caused

4

her fall was created by a crew member who was pushing water around on the deck. (Resp. at 4-5.) According to Plaintiff, Defendants had a duty to warn of a puddle on the deck if they were aware that rain would cause a puddle to form or if a crew member created the puddle. (Resp. at 7.) In reply, Defendants argue that Plaintiff's arguments are impermissibly based on speculation and therefore must be rejected. (Reply at 1.)

## II. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as

to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

### III. Discussion

When an injury occurs on navigable waters, federal maritime law governs the substantive legal issues in the case. Everett v. Carnival Cruise Lines, Inc., 912 F.2d 1355, 1358 (11th Cir. 1990); Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1320-21 (11th Cir. 1989); Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1334 (11th Cir. 1984). Federal maritime law exclusively sets substantive liability standards, superseding state substantive liability standards. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628 (1959). With respect to the standard of care for passengers, the Eleventh Circuit has held that "the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or

constructive notice of the risk-creating condition." Keefe, 867 F.2d at 1322.  A shipowner must give notice of dangers which are not apparent and obvious.  N.V. Stoomvaart Maatschappij Nederland v. Throner, 345 F.2d 472 (5th Cir.1965);[4] Luby v. Carnival Cruises, Inc., 633 F. Supp. 40 (S.D. Fla. 1986).

The Court finds that there is a disputed issue of material fact regarding the time frame of the rain. Plaintiff testified that it was not raining when she returned to the ship before lunchtime and prior to her fall. (Wish Dep. 63.)  Mr. Carillo testified that it was drizzling when he and Plaintiff left lunch. (Carillo Dep. 19.)  While Mr. Castellano did not have an independent recollection as to whether it was raining that day, he testified that the cruise's logbook reflected that it was a rainy day.  (Castellano Dep. 6, 17-18, 43-44.)  The timing of the rain is significant.  Had it rained early in the morning as suggested by Plaintiff's testimony, a fact finder could conclude that, by lunchtime, Defendants had adequate time to remove water from the pool deck.  On the other hand, had it been drizzling or simply been a rainy day, a fact finder could instead find that, at the time Plaintiff walked across the deck, Defendants had been not been afforded ample opportunity to mop the rain from the deck.

Related to this disputed issue of fact is Plaintiff's testimony that the puddle of water that caused her fall comprised a three to four foot area. (Wish Dep. 65-68.)  A puddle of that size could suggest to a fact finder that a heavy rain, and not a drizzle, had occurred.  Or a large pooling of water could have resulted from a different source other than rainwater or from

---

[4] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

rainwater that was left sitting for an unreasonable period of time.  In other words, that size puddle could lead a fact finder to conclude that Defendants did not exercise ordinary care in failing to remove the puddle. Of course, should a fact finder credit the testimony that April 2, 2007 was a rainy day, Defendants would not be responsible for an injury occurring solely because rain caused the deck to become wet.  See Katz v. Cie Generale Transatlantique, 271 F.2d 590, 590 (4th Cir.1959) (merely because an accident occurs, a carrier does not become liable to a passenger);  see also Moore v. American Scantic Line, Inc., 121 F.2d 767, 768 (2d Cir.1941) (the vessel is not the insurer of the safety of the passengers); N.V. Stoomvaart, 345 F.2d at 472 (while there is a duty of the carrier to warn the passenger of dangers, this obligation extends only to those dangers which are not apparent and obvious to the passenger).

 Moreover, the Court rejects Defendant's argument that, by adequately warning Plaintiff that the pool deck could be slippery when wet and by taking extreme measures to keep the deck area dry, they fulfilled their duty of care to Plaintiff.  (Mot. at 7.)   To begin, there is an issue of fact regarding whether Defendant gave adequate notice to Plaintiff that the pool deck could be slippery when wet.  Although Defendant points to evidence that the cruise always posted numerous warning signs and provided warnings in the form of pamphlets and televised messages, Plaintiff highlights evidence that a fact finder could use to conclude that these warnings were not provided.  For example, Plaintiff testified that there were no warning signs, and this testimony was corroborated by Mr. Carillo.  Likewise, the Court cannot accept Defendants' contention that because they took "extreme measures" to keep the deck dry, they are

8

entitled to the granting of summary judgment.[5]   While the fact finder may find that the use of six pool boys to mop and squeegee the pool deck constituted reasonable care to protect passengers, a fact finder could also find that the use of six pool boys was inadequate, given the size of the pool deck.[6]  Nonetheless, even ignoring those factual disputes relating to the warnings and the efforts to keep the deck dry, the Court concludes that the record is unclear on the ultimate issue, i.e., whether the water on the deck was caused by rainwater and, if so, the timing of the rainfall.  As a result, the Court is unable to determine, as a matter of law, if the water on the ship's deck was an open and obvious or an unapparent and dangerous condition, which was allowed to remain for an unreasonable period of time.

Accordingly,  Defendants' Amended Motion for Summary Judgment [DE 25] is **DENIED**.  The Clerk shall also terminate for statistical purposes Defendant's Motion for

---

[5] The cases relied upon by Defendants (Mot. at 8-9) in support of its argument that the use of pool boys and the type of flooring on the pool deck constitute reasonable care did not arise in the summary judgment context but after trial. See, e.g., Holland v. United States, 918 F. Supp. 87 (S.D.N.Y. 1996); Hess v. United States, 666 F. Supp. 666 (D. Del. 1987). The only summary judgment case cited by Defendant was Munsill v. United States, 14 F. Supp. 2d 214 (D.R.I. 1998). (Mot. at 9.)  In that case, however, the court sought to predict how the Rhode Island Supreme Court would interpret the "storm in progress" doctrine, and concluded that the Rhode Island Supreme Court would adopt the majority rule followed by other states that have held, as a matter of law, that business owners have a reasonable time after a snow storm to remove snow from walkways.  Id. at 221.  That state law case has limited applicability to the maritime context, given that its analysis rests on the duty of care required of a business owner.

[6] The Court rejects Plaintiff's contention that a crew member created this puddle.  Given that there is no record evidence to support this contention, it is entirely speculative.  See Cordaba v. Dillard's Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) ("speculation does not create a genuine issue of fact") (emphasis omitted).

9

Summary Judgment [DE 21].

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of July 2008.

_____
KENNETH A. MARRA
United States District Judge

.